# Gillespie's Estate.

An administrator having given legal notice of the time and place of the sale of real estate, in pursuance of an order of the orphans' court, and not being then able to effect a sale, he may adjourn the same to any period less remote than twenty days.

It is the duty of the orphans' court to require of an administrator a strict observance of the legal form of selling real estate at public outcry, and for any departure from it, from which a suspicion of unfairness arises, to set the sale aside, at the instance of any creditor or heir; but the court should not set aside a sale fairly made, on such grounds, at the instance of a stranger, whose own conduct in the matter left him without legal or equitable right to interfere.

THIS was an appeal by John Snowden, Jun., from the decree of the orphans' court of *Fayette* county, confirming the sale of the real estate of Neal Gillespie, deceased, to John L. Dawson and William F. Coplan.

The facts of the case are all clearly stated in the opinion of the court.

*M'Kennon* and *Biddle*, for appellants, cited 2 *Watts* 164; 1 *Rawle* 361; *Str. Purd.* 768, sect. 40; 4 *Watts* 257; 6 *Watts* 150; 2 *Watts* 383, 264; *Str. Purd.* 773, sect. 2; 3 *Con. Chan. Rep.* 506.

[Gillespie's Estate.]

*Veech* and *Dawson, contra,* whom the court declined to hear.

The opinion of the court was delivered by

Huston, J.—By the law of this state, administrators may, on application to the orphans' court, be empowered to sell lands of the intestate. With regard to the mode of the application and proceeding in this case, no objection is made up to the 12th of August, when adjournment took place until the 29th. The act requires twenty days' notice of the time and place of sale, but we are all of opinion if that has been given, and a sale cannot be then effected, that the administrator may adjourn the sale to a day less remote than twenty days.

On the 12th several bidders appeared for a piece of land between Brownsville and the river Monongahela. The bidders conferred together—the bidding ceased, and the property was struck down to a Mr Snowden at 555 dollars, but the other persons and he agreed it was to be returned *as a* sale to the borough of Brownsville, and the sale of a mill and lot of land were adjourned till the 29th of August. In the mean time, Mr Snowden ordered the administrator to return it to him, and offered 2000 dollars for the mill and lot, and left home, having made no provision for the payment of the part which he claimed. Some dispute seems to exist, as to what actually took place on the 29th of August, and there is some uncertainty as to whether the price knocked down on the 12th was again cried on the 29th. After the property on that day had been cried a long time, and no bid, Dawson and Copeland handed to the administrator a written offer of 3055 dollars for the whole. At the orphans' court, which was on the 3d of September, Snowden had not returned home. The administrator waited that day and the next day, and then returned the whole as sold to John L. Dawson and William F. Copeland, who paid better than half the purchase-money according to the sum offered by them.

Mr Swowden returned home on the Thursday of the court week, but did not go to the court. There was an adjourned orphans' court on the 12th of September—another on the 23d of September—again adjourned to the 4th of October—during all this time Mr Snowden neither applied to the administrator nor to the court, though it is proved that he was told of the return the day after he returned home—his first application was to the court on the 4th of December. It was proved that the mill was in a ruinous state and in danger of falling. That in October Dawson and Copeland expended about 450 dollars to a mason, and 50 dollars to other mechanics. That Snowden was repeatedly in sight of, and near to the workman and Dawson, who attended every day, and gave no notice of his intended claim.

No creditor nor heir, objects to the sale as returned—no allegation is made that the administrator did not obtain the highest possible price for the property—no higher price is offered for the whole

x.—2 a*

[Gillespie's Estate.]

or any part of it—but Mr Snowden applied to have the sale of what is called "the beach," set aside, and that the administrator may be ordered to return it to him at his bid of 555 dollars.

The borough of Brownsville has refused to take it. Independent of the facts, that others ceased to bid, on the agreement that it was to be purchased for the borough—and of the fact, that when it was knocked down, it was distinctly understood by the administrator, by Snowden, and others present, that Snowden was not the purchaser, but the borough was, there are other circumstances which must prevent us from interfering. I admit, that an administrator may make a deed, can tender it to the bidder and recover the price—this generally—but do not admit, that he is bound to do so in all cases. On the 12th of August, all present understood it was sold to the borough, and it is not easy to see how, under these circumstances, he could have compelled Snowden to pay; when Snowden went away, and the borough declined to take the property, the administrator might (at his own risk perhaps) consider it unsold, and set it up again—he got a higher price.

The conduct of Mr Snowden, his going away, having made no provision to pay, his not attending the court when return was to be made, and neither speaking nor writing to the administrator, and his passing three successive orphans' courts, while the others were rebuilding the mill, without notice of his claim, while the administrator was paying away the money, and the purchasers were expending money on improvements, leave him without legal or equitable right to interfere.

Something was said about the irregularity of a bid handed to the administrator in writing, and not openly made and proclaimed by the crier. No doubt every orphans' court will strictly investigate, and so will this court, every sale, and if there is any reason to suspect any collusion or unfairness, will, at the instance of an heir or creditor, set aside a sale; but it would be over-straining to interfere, at the instance of a stranger, and set aside a fair sale, considered beneficial by all interested, and order a new one, which must injure administrator, purchaser, and probably both heirs and creditors.

The application to set aside the sale is rejected.